We'll move now to our last case of the morning. This is Appeal 22-1972 Martin v. Kijakazi. We're going to begin with oral argument from Mr. Farr. Good morning and may it please the Court, my name is Eric Farr, Counsel for Appellant. In this case, the ALJ committed reversible error when she refused to adopt the opinions, the only medical opinions available in the record, opinions provided by her state agency's own consultants, and did not seek new medical expert opinion to interpret complex objective medical imaging, specifically x-rays and MRIs that post-dated Mr. Martin's date last insured. This case is very comparable to McHenry v. Berryhill. In both cases, the issue was whether potentially dispositive medical imaging that was only available after the date last insured might refer to the condition actually having existed to the same level of severity prior to the date last insured. In McHenry, it was a period of four months. Here, it's a period of five months. If he had been found limited to light work at any point prior to his date last insured, since he could not do his past work, he would have been found disabled by the judge and entitled to disability insurance benefits, which would have resulted in a higher benefit amount to him that wasn't dependent upon income and resources and given him access to Medicare. So it made a real impact to him in having this denied. I really am not familiar with any contrary case law, and the appellee's response in the response brief was largely based around the idea that this argument had been waived because it wasn't raised at the district court level. However, the same argument was basically raised in largely the same format in district court. I actually believe that we start with his filing date, which was in June 2018. His alleged onset date is June 2016. Maybe a medical expert would look at that and say, there's no way I'm going to say chronic degenerative changes evidenced on x-ray could go all the way back two years. But it seems a lot more plausible that a medical expert looking at that data might say, okay, it goes back five months, especially since their own state… Mr. Farr, that sounds to me like an invitation to speculate. Has any doctor opined that Mr. Martin had disabling impairments before December 31, 2017? Yes, Your Honor. When the state agency consultants reviewed this, they were reviewing for a disability insurance benefit period, which would have been… They examined him in late 2018 and wrote that they were providing a current assessment, correct? For disability insurance benefits. Current assessment. Well, if the current assessment had referred to after the date last insured, then they would have said, as they do in other cases, that there was insufficient evidence. That's a finding they routinely make, that there was insufficient evidence for the period they review. So you think they were opining that he was limited to light work before the date last insured? Yes, Your Honor. That's pretty hard to get off. I frankly have trouble getting that off their examination reports. Even if you did not view those examination reports to say that it referred to the relevant disability insurance benefit period, then we still have a situation that's very comparable to McHenry because we're still dealing with potentially dispositive evidence that comes just a few months after a relevant change in benefit eligibility. Do we get ourselves into trouble by implying onset dates, though? Notwithstanding the use of the word current with regard to the agency physicians, there's evidence on the record here that he got better between 16 and 18. He was lifting weights, walking around. Is your request for us to imply the onset date, obviously it's for this case, are you also asking us to make it a ruling for other cases? No. Sorry, Your Honor. No, I wouldn't actually request that we imply an onset date here at all. Rather, I think the issue is that the ALJ, even though she had the ability to consider an earlier period, interpreted her agency's rulings to say that she could not look at an earlier period in time, and really the only request I'd ask today is that this court remand so that she could actually have a medical expert interpret that objective imaging. I'd rather us not get into speculating as to when it might apply. But we've got this new Social Security ruling in 2018 that makes, I think, awfully clear that that's left to the discretion of the ALJ. The phrasing of the ALJ's opinion, at least as I read it, is that she believes she was not allowed to make a decision prior to when medical evidence was established, and I think that's reflected in the onset date that she picked because there was nothing special about the primary care visit she picked as the onset date. That was in February of 2018. February 5th. Thank you. And that date, he just goes into his primary care doctor for the first time, says, I have a history of back pain, doesn't have any specific complaints that day. Comes back the next time, I think at that point he's in a wheelchair for a period of time. In May. And they get x-rays and they say, okay, there's some degenerative changes here. I think the fact that between a few months he's going from this isn't a primary concern to this is a big issue where there hasn't been any big injury in between is reflective of his allegation that there's a fluctuating level of intensity between 2016 and 2018. Now, again, maybe a medical expert would say, there's no way we can infer that that pattern would exist all the way back two years. But I think a medical expert very well might say five months earlier, yeah, that seems reasonable. The discretion that Judge Hamilton referred to, in the policy statement, that's discretion to hire a medical expert. So how do you get around that? It's pretty clear it was within the ALJ's discretion. She didn't have to get a medical expert to help her with this onset question. There would be no other way for her, as a layperson, to interpret those MRIs to refer to an earlier onset date than it would be for me to speculate as to when it might apply as another layperson. This isn't like referring to evaluating a subjective symptom complaint or referring to here's the establishment of a treatment pattern over time. This is just if we look at this imaging report, what does that mean? And as a non-expert, I can't really tell you what that means or how long that degenerative change might have existed. But it also seems very unlikely that the ALJ's interpretation is reasonable here to say that he shows up to a primary care doctor for no particular reason and boom, now he has this severe degenerative change that limits him to light work. That sounds like you're trying to find error in a judgment the ALJ made in your client's favor. Instead of going with an onset date of May of 2018, she's giving him the benefit of the doubt back to February where at least there's some medical evidence, he saw somebody. But one of the difficulties I have with the argument here is that you seem to be trying to reverse the burden of proof. The burden is on the claimant to come forward with medical evidence of disabling impairments and you're trying to say we didn't have to do that. It was an abuse of discretion by the ALJ not to go look for such evidence for us. Well, in Kipling v. Saul, which is an unpublished decision, this court did say that it's the claimant's responsibility to bring forth evidence. It's not the claimant's responsibility to provide it, right? I'm sorry, Your Honor. The statute makes that burden pretty clear, doesn't it? To provide evidence, Your Honor, I guess. Which he did provide evidence of a degenerative condition. And SSR 18-1P would direct that if you have a non-traumatic impairment, you can look to subjective symptom reports to look to an earlier period. I would say that I take your point that I am also kind of arguing, hey, she gave him the benefit of the doubt maybe. I think either way, she doesn't really have a clear explanation for why she picked that date. I mean, if she wanted to deny him until a later date because she had medical experts telling her, hey, the imaging doesn't support an earlier date, I think that would be a reasonable outcome. If she said, okay, now that I've had a medical expert look at this, or based on what my state agency consultants have said, then we could pick an earlier date. That would be fine. Here, she just picked a completely random date out of a hat. Well, she had to pick a date. It's not random. Come on, counsel. She picked a date that was in the document, and she was pretty generous, wasn't she? I don't think it is too generous to, again, this man is, I believe he's currently married still, and his income situation would suggest that he's not actually going to get anything because of his spouse's situation. So it actually resulted in basically a nothing for him. Maybe it's generous on the record to say partially favorable, but if the outcome is basically the same as denying him, then I don't know that that is a generous thing or giving him the benefit of the doubt. Do you want to reserve the remainder of your time? Yes, Your Honor. Thank you. Thank you. Ms. Hahn, we'll now move to you for argument from the Commissioner. May it please the Court, Counsel, Lou Hahn on behalf of the Commissioner of Social Security. I'll begin by recounting some of the testimony that Mr. Farr did not get into in his presentation, but that we summarized in our brief. This was at the February 2020 administrative hearing, where Mr. Martin appeared with his attorney before ALJ, Livia Morales. During that hearing, in response to questioning by both the ALJ and his own attorney, Mr. Martin confirmed that after injuring his back in June 2016 at a job where he was lifting a heavy bag of, I believe, water-softening salt that was 40 pounds, he hurt his back but quickly improved. He even said by his own words he got to the point where he didn't think much about it. He, as Your Honors pointed out, was walking two miles a day, lifting weights, going about his activities between 2016 and 2018. And as Your Honors realize, and as Mr. Farr and the government agree on, the operative date for his insurance-based benefits, the disability insurance benefits piece of this case, which is the only one at issue, that operative date was December 31, 2017. So by Mr. Martin's own testimony, his own statements, he had no back problems. In fact, he was... I wonder if that's truly fair. His testimony was that his back problems came and went, and when they went, he could lift weights and so forth and so on. And his testimony was also that he didn't need the rolling walker until 2018, but he certainly had problems lifting in that period between 2016 and 2018 when his back problems were present. Your Honor makes a very good point in that he did his job, the prior job that he had, at a heavy level. He was lifting heavy at that job. His testimony talked about the amount of weight that he was required to lift at the job that he no longer could do. And when asked point blank, however, by his attorney, did you have back problems prior to 2018? He answered, as we state in our brief, unequivocally, no. That was in the context of the walker. I'd like to, you know, back problems that necessitated the use of the walker that you are now using, you see. So that's, I think, somewhat unfair reading of that particular part of the testimony. But Mr. Farr does make a good point that this February 2018 date, that's just an internist visit. It's not a visit to diagnose a back problem, to consult about a back problem, to complain about a back problem. He's listing back pain as one of many symptoms when you give your history to a doctor. The ALJ, I read the decision, and she does seem to clearly say that she can't rely on anything other than objective medical evidence to find an onset date. That would seem to contradict SSR 18, or the policy statement. I may be missing a letter or a dash or something there. That would seem to contradict the policy statement, which clearly, this October 2018 policy statement, which says that the administration can look to symptoms or medical evidence, medical evidence or symptoms, to establish an onset date. And an onset date can happen before there's an actual medical record. Her decision clearly says, I can't find an onset date before an established medical record. So can you just address that? Absolutely, Your Honor. Social Security ruling 18-1P, which we cite throughout our brief, that's the ruling that Your Honor is inquiring about. And in that ruling, it talks about the establishment of an onset date of disability. But to get to that ruling, when you read the language of the ruling, an individual claimant must establish that he or she is entitled to disability. And in going back to the five-step sequential evaluation process, one of the steps, number one is, was an individual engaging in substantial gainful activity? In this case, no. But number two, is there evidence of a medically determinable impairment? Don't we have that finding here? Because she finds that based on the May 18 X-ray. So she's found the impairment. Now it's merely a question of an onset date, which is a separate inquiry. To divide between the two kinds of benefits here, there's the Title 16 benefits under the Social Security Act, which are resource-based, and that's the supplemental security income benefits. That was part of the claim here. There's also the insurance-based benefits under Title 2 of the Act. And in that one, that is very much dependent on a period of insured status. So when the ALJ in Step 2, and this is found on Page 4 of 9 of her decision, on that page of the decision at the second step is where the ALJ discusses the existence of a medically determinable impairment. In that one, the operative regulation is 20 CFR 404.1521. And in that regulation, that's the regulation that describes how to find a medically determinable impairment. That's a threshold question in which an individual must furnish evidence to show the existence of a determinable impairment before moving on. At that step in this particular claim, ALJ Morales dismissed the insurance-based benefits only. She proceeded through the remainder of the evaluation process based on the other type of resource-based benefits, which she found that Mr. Martin was entitled to. But at Step 2, she found that in searching the record, the record that Mr. Martin and his attorney furnished that they confirmed at the hearing was complete, she was unable to find evidence of any kind of medically determinable impairment without going to the ruling, Social Security Ruling 18-1P, because that ruling, again, is premised on the establishment of an individual has already established entitlement to benefits, as in they've already furnished medical evidence showing an impairment. But here, what the ALJ is doing, and this is fairly nuanced, but in that step, she is saying, I cannot find any medical evidence of an impairment prior to the visit to the internist on February 5, 2018, to Michael Cotty, and it was Dr. Cotty's treatment notes that the ALJ referred to as the first, any kind of medical evidence in this record. So for that threshold Step 2 issue of was there the existence of a medically determinable impairment at some time before the lapsing of the insurance benefit period, she found no. She dismissed that portion of his benefits claim at that step, and she moved to the next three, four, and fifth steps of the sequential evaluation process for the resource-based benefits under Title 16. So it's an interplay between both the regulation, 4.4.15.21, as well as 18-1P, which in this case, the ALJ did not run afoul of any regulation or ruling. The ALJ was tasked with being the fact finder, and that's exactly what she did. She evaluated the facts. She referred to Mr. Martin's own testimony. She referred to and did discuss on page 7 of 9 the prior administrative state medical findings from Drs. Whitley, Drs. Corcoran, that were made in September 2018 and January 2019, respectively. What the ALJ did here with the record, with the evidence that was provided by Mr. Martin and his attorney, was reasonable. They're simply, in looking at this, no legal or factual basis for this court to send this back. And as Mr. Farr, if I'm understanding his oral presentation today, is saying that it would have been reasonable for the ALJ to find a later period of time of disability starting in May, or it would have been reasonable to find some earlier time prior to the end of the year in 2017. But specifically what the ALJ did here, which is using a medical record which said positive for back pain on February 5th, 2018, based on his argument, unreasonable. That either it could be more prejudicial to give, I suppose, his client fewer benefits for the difference of February to May, or earlier. But what this court is looking at, and it's looking at the final agency decision here, which is the ALJ's March 2020 decision, is was it wholly unreasonable? What the ALJ did to resolve the issues in this case was no reasonable mind able to make this determination. And it's our position that the ALJ was reasonable in this determination on this narrow issue of the insurance-based benefits. Thank you, Ms. Hahn. Thank you. We'll now move back to Mr. Farr. We'll give him one minute for rebuttal. Thank you. I'd just like to make two points quickly. First, SSR 18-1P directs that you can rely upon subjective symptom complaints and reports from claimant or family members or friends or whatever else when considering whether a medical impairment exists earlier than the medical evidence available. DIB, disability insurance benefits, and supplemental security income both use the same sequential evaluation process. At step two, it's not a separate process for DIB versus SSI. It's the same evaluation. She established a medically determinable severe impairment existed in the form of chronic degenerative disc disease. Then the issue becomes can we establish that that impairment existed earlier than the medical records existed. So we already have the severe medical impairment. She thought she couldn't even look to an earlier period. So that was just disconcordant with agency policy. Secondly, the judge did not have to find that this man couldn't do any work at all. He just couldn't do his past work anymore. It seems like every we don't have a lot of doctor's opinions here, but the doctors who looked at it at least said he can't do more than life work. I don't think that that's highly unlikely to have changed in the few months earlier, and I see that my time is up. So thank you. Thank you, Mr. Farr. Thank you, Ms. Hahn. The case will be taken under advisement.